TEXAS & NEW ORLEANS RAILROAD COMPANY ET AL. V. WELLS-FARGO EXPRESS COMPANY.

No. 1839. Decided May 6, 1908.

**1.—Statutory Construction—Retroactive Law.**

Statutes will not be held to have a retroactive or an ex post facto effect unless their language compels. (Pp. 571, 572.)

**2.—Same—Railways—Free Pass—Contract with Express Company.**

The Act of March 26, 1907, Laws, 30th Leg., p. 93 (Anti-free Pass Law) does not apply to nor attempt to invalidate acts to be done upon valuable consideration in the carrying out of mutual and dependent contracts between railway and express companies made before its passage, though involving transportation of persons, property and messages of the express company upon passes or evidences of right to transportation to be thereafter issued without other consideration than that arising from such previous contract. (Pp. 569-572.)

**3.—Same.**

Transportation for a valuable consideration under a previous contract was not done "free of charge" within the meaning of the Act of March 26,

1907; nor did it involve the giving of a "free" pass or frank; nor the selling, after the passage of the law, of "transportation for any greater or less rate than is charged to all persons under the same conditions;" nor any other transaction thereby prohibited.    The acts, though done after the passage of the law, were on good consideration and in the execution of a contract valid when made, the carrying out of which was not made unlawful by the terms of the statute.    (Pp. 568, 572.)

Error to the Court of Civil Appeals for the First District, in an appeal from Harris County.

The suit was brought by the Wells-Fargo Express Company to enforce specific performance of a contract with the railway companies. A judgment in plaintiff's favor was affirmed on appeal by defendants, who then obtained writ of error from the Supreme Court.

*Baker, Botts, Parker & Garwood* and *J. S. McEachin,* for plaintiffs in error.—The contract involved in this case is not protected by the Constitution of the United States or by the Constitution of the State of Texas and the petition therefore shows no cause of action, it being apparent upon the face of the petition that the contract sought to be enforced is violative of a State statute.    Knoxville Iron Co. v. Harbison, 183 U. S., 13; Holden v. Hardy, 169 U. S., 366; Calder v. Bull, 3 Dall., 386; Satterlee v. Matthewson, 2 Pet., 412; Watson v. Mercer, 8 Pet., 89; Julienne v. Touriac, 13 La. Ann., 599; Cordes v. Miller, 33 Am. Rep., 430.

The Act of the Legislature was a valid exercise of the police power of the State, and does not contravene any constitutional provision, State or national.    Knoxville Iron Works v. Harbison, 183 U. S., 13; Butcher's Union Slaughter House v. Crescent City Live Stock L. and S. House, 111 U. S., 746; Chicago, etc., Ry. v. Nebraska, 170 U. S., 72; Stone v. Mississippi, 101 U. S., 814; People ex rel. New York Electric Line v. Squire, 145 U. S., 175; Minneapolis & St. L. Ry. v. Emmons, 149 U. S., 364; New York & N. E. Ry. v. Bristol, 151 U. S., 556; Eagle Insurance Co. v. Ohio, 153 U. S., 446; Barlow v. Gregory, 31 Conn., 264; Buffalo East Side Ry. Co. v. Buffalo Street Ry., 111 N. Y., 132; Knoxville v. Bird, 12 Lee (Tenn.), 122; Justice v. Commonwealth, 81 Va., 212.

Decisions sustaining judgments against retroactive laws which deprived the litigant of property or property rights can not be looked to for guidance in the instant case unless the laws condemned involved an exercise of the police power.    The constitutional limitations which have been invoked have no application to an exercise of the police power where the purpose is to eradicate a manifest evil.    Harbison v. Knoxville Iron Works, 103 Tenn., 421, 183 U. S., 13; Ritchie v. People, 155 Ill., 98; Dunne v. People, 94 Ill., 141.

Neither have they application where the respective parties are not private parties, but are corporations whose rights were created for public purposes and the subject matter of the contract affects the public morals.    Chicago, etc., Ry. v. Nebraska, 170 U. S., 72.

*Hume, Robinson & Hume* and *Chas. W. Stockton,* for defendant

in error.—The petition alleges a valid cause of action, upon a contract that is neither violative of the State statute approved March 26, 1907, known as the Anti-Pass Law, nor within the terms, meaning or purview thereof. Laws, 30th Leg., p. 93; State Const., art. 1, secs. 16, 19, 29; Taylor v. Duncan, Dallam, 514, 517; De Cordova v. Galveston, 4 Texas, 470, 473-480; Paschal v. Perez, 7 Texas, 348, 365; Hamilton v. Flinn, 21 Texas, 713, 716; Sherwood v. Fleming, 25 Texas Supp., 408, 428-9; Orr v. Rhine, 45 Texas, 345, 353; Galveston, B. & C. N. G. R. Co. v. Gross, 47 Texas, 428, 435-6; Piedmont & A. Ins. Co. v. Ray., 50 Texas, 511, 519; Grigsby v. Peak, 57 Texas, 142, 146-7; Mellinger v. Houston, 68 Texas, 37, 42, 45, 48; Rockwall Co. v. Kaufman Co., 69 Texas, 172, 174; Mitchell Co. v. City Natl. Bank, 91 Texas, 361, 374-8; State v. Galveston, H. & S. A. R. R. Co., Texas, 97 S. W. Rep., 74, 78, citing Butler v. Pennsylvania, 10. How., 415, and Mayor v. Cooper, 6 Wall., 247; Phoenix Insurance Co. v. Shearman, 17 Texas Civ. App., 456, 459-60; Grenada Co. v. Brogden, 112 U. S., 261, 269; Hooper v. California, 155 U. S., 648, 657; St. Louis S. W. R. Co. v. Purcell, 135 Fed. Rep., 499, 503; 26 Am. & Eng. Ency. of Law, 693.

The parties being chartered transportation companies, neither they, nor those operating them, nor their officers, agents or employes, are forbidden by the Anti-Pass Law to grant or exchange free passes, franks, privileges, substitutes for pay or other thing prohibited by the law.

If it be the intent and effect of the Anti-Pass Law to invalidate the contract of the parties, or to release them or either of them from its performance, the law is void—in that the contract was and is valid, and within the protection of the provisions of the Constitution of the State inhibiting the passage of retroactive laws and laws impairing the obligation of contracts, and inhibiting the deprivation of property except by due course of the law of the land, and the provisions of the Constitution of the United States inhibiting the passage by the States of laws impairing the obligation of contracts, and inhibiting the deprivation of property by the States without due process of law and their denial to those within their jurisdiction the equal protection of the law. Constitutional provisions—State: art. 1, secs. 16, 19, 29; United States: art. 1, sec. 10; 14 Amend., sec. 1; Texas-Mex. R. Co. v. Locke, 74 Texas, 370, 397-400; Lerma v. Stevenson (a Texas case, U. S. C. C., Maxey, J.), 40 Fed. Rep., 356, 359; Grigsby v. Peak, 57 Texas, 147; Osborn v. Nicholson, 13 Wall., 656, 662; Davis v. Gray, 16 Wall., 232; Walker v. Whitehead, Id., 314; Edwards v. Kearzey, 96 U. S., 595-6, 598, 602, 607; Wolf v. New Orleans, 103 Id., 367-8; Cooley's Const. Lim., 5 ed., top page 446 and pages 453-4); Gage v. Neblett, 57 Texas, 374; Wright v. Straub, 64 Texas, 64, 66-7; Loan Association v. Hardy, 86 Texas, 610; Receiver v. Stanton, 86 Texas, 620, 627-8; Receivers v. DuBose, 87 Texas, 78, 82-3; Thompson v. Cobb, 95 Texas, 145, 147; White v. Hart, 13 Wall., 646, 652-4; Delmas v. Ins. Co., 14 Wall., 661, 667-9; Gunn v. Barry, 15 Wall., 610, 620-4; Boyce v. Tabb, 18 Wall., 546-8; Louisiana v. New Orleans, 102 U. S., 203, 206-7; Seibert v. Lewis, 122 U. S., 284, 295, 297-8, 299-300; Denny v.

Bennett, 128 U. S., 489, 491-2, 494-5; Barnitz v. Beverly, 163 U. S., 118; Shapleigh v. San Angelo, 167 U. S., 646, 657; 8 Cyc. of Law and Proc., 932.

If it be the intent and effect of the Anti-Pass Law to make the performance of the contract by the parties unlawful, then, it is not a valid exercise of the police power of the State, and contravenes the inhibition by the Constitution of the State of retroactive laws and laws impairing the obligation of contracts, and of deprivation of property except by due course of the law of the land and the inhibition by the Constitution of the United States of State laws impairing the obligation of contracts and of deprivation of property by the State without due process of law.   Mugler v. Kansas, 123 U. S., 623; Lawton v. Steele, 152 U. S., 133; Holden v. Hardy, 169 U. S., 366; Lake Shore, etc., Ry. Co. v. Smith, 173 U. S., 684; Lochner v. New York, 198 U. S., 45; Graham v. Folsom, 200 U. S., 242.

Mr. Justice Williams delivered the opinion of the court.

The defendant in error brought this action for specific performance of a written contract between it and the plaintiffs in error, The Texas & New Orleans Railroad Company, The Galveston, Harrisburg & San Antonio Railroad Company, and the Houston & Texas Central Railroad Company, a copy of which was attached to the petition and which was originally executed November 24, 1893, to continue in force for twenty-one years from January 1, 1894, and was so modified on March 26, 1906, as to express the intention to eliminate provisions which might have been regarded as conflicting with the anti-trust laws of the State.   There is no contention that, as modified and enforced by the judgments of the courts below, it was in any of its parts invalid under the law as it existed at the dates given. The sole objection to the relief prayed for was raised by demurrers to the petition and it is that the further execution of the contract was rendered illegal by the passage of the Act of the Legislature, approved March 26, 1907, known as the anti-free pass law.   (Laws 30th Leg., p. 93.)   Specific performance was decreed by the District Court and its judgment was affirmed by the Court of Civil Appeals. The only reason urged for a reversal of the judgment is that above stated as raised by the demurrers.

The contract is lengthy and it is not necessary to an understanding of the questions decided that it be copied or that more than a condensed statement of its provisions be given.   It recites that, "in consideration of the reciprocal engagements, separate services and payments hereinafter specified," the parties mutually agree, etc. The Railroad Companies agree (1) to furnish cars in their daily passenger trains for the storage and transportation of express matter handled by the express companies; (2) to carry free of charge in the cars so furnished upon trains carrying express matter all messenger safes, empty packing trunks, one messenger in charge of express matter, all necessary additional messengers as helpers, or guards against robbers; (3) to give passes for free transportation of officers, agents and servants of the Express Com-

pany, when travelling on the business of that Company; (4) to carry, free of charge, on its freight trains, when so requested by the Express Company, the horses, wagons, trucks, office safes, office furniture, fixtures, stationery, hay, grain and other legitimate equipment and supplies of the Express Company required in the operation of its express business; (5) to grant to the Express Company the right to employ, as its own, the servants and agents of the Railroad Companies, when it may be done without detriment to the service of the Railroad Companies; (6) to transmit, free of charge, over telegraph lines owned, operated or controlled by the Railroad Companies on their roads, all business messages of the Express Company, or its agents, so far as contracts with telegraph companies will permit, and, at the request of the Express Company, to secure, as far as they can, like privileges over all telegraph line connections which they (the Railroad Companies) may now have or hereafter acquire; (7) to allow the Express Company, without additional charge, the use of reasonable space in or about their depots or station buildings, for the temporary storage or delivery of express matter. In consideration of the "accommodations, services, rights and privileges herein specified," the Express Company agreed (1) to pay $668,750.00 on or before January 1, 1894, and 16,625 shares of its capital stock, of the agreed value of $130.00 per share, on or before January 31, 1894, and further to pay monthly during the term of the contract forty percent of its gross earnings; (2) to carry, free of charge, money remittances, current official advices and reports, business parcels or packages belonging or addressed to the Railroad Companies, their agents and servants, relating to the regular routine work and management of their transportation lines; (3) to assume all risks of loss or damage to express matter and of injury to its officers, servants and agents and to indemnify the Railroad Companies against same.

There are some other stipulations which need not be stated, as some of them were eliminated by the supplemental agreement referred to and were so treated by the judgment, and others do not affect the question before us. We have, for the sake of brevity, stated the contract as originally made between the parties to this action, but, to be more accurate, it was first made between the Southern Pacific Company acting for itself, for the plaintiffs in error, and for some other railroad companies which were afterwards consolidated with different ones of the plaintiffs in error. All of the companies finally executed the contract for themselves, and no question is made as to its proper execution by them.

From this statement it will be seen that none of the services that were to be rendered by the Express Company to the Railroad Companies, or by the latter to the former, were to be rendered free of charge, although the contract with respect to some of them, says they are to be so rendered. When it is read in its entirety, it plainly appears that those things which are to be done by one party are for valuable considerations received and to be received from the other. Plainly the stipulations are mutual and dependent, all that is to be done on one side being the consideration for all

that is to be done on the other. Under such a contract it is impossible to hold that any one of the services is to be rendered free of charge. While persons and property are said to be carried free, it is because of the large benefits received by the party so undertaking from the other; and the expressions, "free of charge," and the like, necessarily mean merely that no specific additional charge is to be made for such service. This seems too plain to require elaboration. The first question, then, is whether or not the Act of 1907 undertakes to make the performance of such a contract unlawful? If not, no question as to the power of the Legislature arises.

The first section of the act, upon which the decision mainly depends, is as follows:

"Section 1. That if any steam or electric railway company, street railway company, interurban railway company or other chartered transportation company, express company, sleeping car company, telegraph or telephone company or person or association of persons operating the same or the receivers or lessees thereof or any officer, agent or employee of any such company in this State, shall knowingly haul or carry any person or property free of charge or give or, grant to any person, firm, association of persons, or corporation, a free pass, frank, a privilege or a substitute for pay or a subterfuge which is used or which is given to be used instead of the regular fare or rate for transportation, or any authority or permit whatsoever to travel or to pass or convey or transport any person or property free, or sell any transportation for anything except money or for any greater or less rate than is charged to all persons under the same conditions, over any railway or other transportation line or part of line in this State; or shall knowingly permit any person to transmit any message free in this State or shall give any frank or right or privilege to transmit messages free in this State or property free of charge or for greater or less fare or rate than is charged other persons in this State for similar service; except such persons as are hereinafter exempted under the provisions of this Act, shall be guilty of a misdemeanor, and upon conviction in any action brought on this account, for that purpose, shall pay to the State of Texas the sum of five thousand dollars ($5.000.00) for each and every act which violates the provisions of this section; and any person, president, director, officer, employee or agent of any such corporation or association of persons who shall sell any transportation for anything except money or knowingly give, grant, issue or cause to be issued a free pass, a frank, a privilege or any substitute for or in lieu thereof for the transportation of any person, article or thing or the sending or transmitting any messages over wire or other means of transmitting messages in this State except to such persons as are hereinafter exempted from the provisions of this Act, shall be deemed guilty of a felony," etc.

No where in the statute is the purpose expressed to interfere with valid contracts executed upon valuable considerations before its passage. If it interferes with the performance of such contracts

it must be because it forbids the doing of some or all of the specific things to be done in such performance.

The language in the section quoted is all clearly prospective and shows no intention on the part of the Legislature to affect transactions already past. The first offense defined is that of knowingly hauling or carrying persons or property. free of charge. The carrying of persons or property under the contract in question could not be the offense thus defined because, as we have seen, it would not be done free of charge. The offense, consisting in the carrying or hauling free, is not constituted by a carrying or hauling for which the carrier has received and is receiving very substantial compensation for everything it does, in the form of money paid, property delivered and services rendered. It might be different if such a service were rendered after the act took effect without any compensation ever paid, although rendered in accordance with a previous promise, agreement, or privilege granted without consideration, for that might be held to be a hauling or carrying free of charge; but that is not this case. So we may dismiss this first provision from further consideration.

The next makes it an offense, if any of the companies named, "*shall* give or grant" a free pass, frank, privilege, substitute for pay or a subterfuge used or given to be used instead of the regular fare or rate for transportation. "Free passes" and "franks" evidently mean authority for free service and nothing of that kind exists or will ever exist in the mere carrying out of this contract. That inhibition, therefore, is not involved.

If it be conceded that the clause, "which is used or which is given to be used instead of the regular fare or rate for transportation," attaches to and explains the words, "privilege" and "substitute," as well as "subterfuge," which is not so plain, this provision still does not reach the case. The language is wholly prospective, "shall give or grant." The right claimed by the Express Company to the services provided for in the contract had already been granted when the statute was passed. By mere force of the contract, without any additional grant, the Express Company was entitled to have those services rendered during the entire term of that contract. That right, extending throughout the period, arose upon the execution of the contract as well as did the right of the Railroad Company to have the payment of the money and the delivery of the stock. Being in existence when the statute took effect, it is not given or granted thereafter, by the carrying out of the contract, and hence the carrying out of the contract would not come within this prohibitory language which denounces only acts that may be committed after its adoption. It must be borne in mind that the things prohibited in the language now under examination are not the hauling or carrying of persons or property for anything but the regular charges, but the granting or giving of any of the kinds of authority specified; and such giving or granting must be done after the statute takes effect. This is not like the provision first discussed, in which the act forbidden is the hauling or carrying free of charge. This reasoning disposes,

also, of all the other provisions of the first section. The act of selling "transportation for anything except money or for any greater or less rate than is charged to all persons under the same conditions," the permitting persons to transmit messages free, or giving a frank, right or privilege to transmit messages free, or to transmit property free, or for a greater or less fare or rate than is charged others for similar services, all must be done in future to come within the language used. Transportation, the right to which was acquired before the law took effect, is not sold thereafter. A person is not permitted to transmit messages or property free when he has paid for it in money, property or services. Nor can a right to such transmission or transportation, acquired by him by a valid contract before, be regarded as the giving of permission to transmit or transport for a charge greater or less than the regular rate, after the statute became a law.

The second section of the act specifies the exceptions that may be made of cases that would otherwise fall within the inhibition of the first section, and it, also, deals with the future.

The third section imposes penalties upon persons, who "shall" use or attempt to use permits or franks issued to others, and to those who "shall" apply for a free pass, frank, privilege or substitute for pay given or to be used instead of the regular fare or rate or for any other consideration except money. It is wholly prospective. The right of the Express Company to the services specified arose before the enactment of the statute, while the law refers to the kinds of authority specified which shall be sought or used in future. One clause of the contract, it is true binds the Railroad Company, upon application, to give free passes to the officers, agents and servants of the Express Company, but, as we have seen, the issuance of such passes will not be free of charge for the reason that the agreement to issue them was paid for by the Express Company in the considerations it rendered and is to render to the Railroad Companies. Such passes will not be issued, it is true, for the regular fare in money paid at the time of issuance, but they will be issued in the acknowledgment of a right acquired before the law was passed. In order to destroy that right it would be necessary to give to the law a retroactive effect which can not be done, unless its language plainly requires it. The act constituting the offense here denounced must 'be done after the enactment of the law and the elements constituting that offense must then concur. This will not be the case here unless the statute be held to act retrospectively upon the right in existence before its adoption.

We might pursue the examination in detail through all the other sections of the statute but that would result only in the reiteration of much that we have already said. The provisions most closely affecting the question raised have been cited and discussed, and a further analysis would only protract the opinion, without adding anything of value. The case is controlled, as was held by the courts below, by the well established rule of construction that statutes can not be held to have a retroactive or an

*ex post facto* effect unless their language compels. We can discern nothing indicating that the Legislature had such a purpose in enacting this law. This renders it unnecessary that we decide a contention of counsel for Express Company that the statute does not forbid the making of such contracts as that in question even in the future. Nor do we reach the question discussed by counsel for the Railroad Companies, as to the constitutional authority of the Legislature, in the exercise of the police power of the State, to forbid the observance of such contracts between common carriers, when, in the judgment of the Legislature, they are deemed to be hurtful to the public.

Upon the question as to the construction of the Act of 1907, which is the only one upon which a reversal of the judgment is asked, we hold the law to be with the defendant in error and this leads to an affirmance.

*Affirmed.*