### McWHORTER v. OLIVER et al. (No. 7175.)

Court of Civil Appeals of Texas. Austin. Oct. 19, 1927.

Rehearing Denied Nov. 9, 1927. Writ of Error Dismissed for Want of Jurisdiction Feb. 8, 1928.

1. Trusts ⚫44(1)—Evidence sustained finding that one executing trust deed had purchased land for brothers and held legal title in trust for them.

In suit to foreclose deed of trust lien, evidence *held* to support finding that one executing deed of trust had purchased land conveyed by him with funds of his brothers and held legal title in trust for him.

2. Mortgages ⚫186(5)—Evidence sustained finding that equitable owners of land had actual possession through tenants, charging with notice person taking trust deed from holder of legal title.

In suit to foreclose deed of trust lien, evidence sustained finding that owners of equitable title were in actual, notorious, and visible possession of land covered by deed of trust, executed by holder of legal title, through their tenants so as to give grantee or any person dealing with holder of legal title notice of their outstanding equitable title.

3. Mortgages ⚫154(3)—It will be presumed that tenant would have told grantee in trust deed true situation regarding ownership of land, had he inquired.

Where neither grantee in deed of trust nor his assignee made any inquiry of tenant on premises as to his possession at time deed of trust was executed, it will be presumed, as mat-

ter of law, that tenant would have told them that one executing deed of trust held legal title in trust for others if they had inquired.

**4. Landlord and tenant ⬧⟹56(1)—Possession by tenant constitutes notice of landlord's right in land.**

Possession of land by tenant constitutes notice of landlord's right in land.

**5. Vendor and purchaser ⬧⟹232(1)—Every person dealing with land must take notice of actual possession.**

Every person dealing with land must take notice of actual, open, and exclusive possession.

**6. Appeal and error ⬧⟹1012(1)—Whether other evidence militated in any way against parol trust agreement as proved was matter for trial court.**

Whether letters of equitable owners to tenant, calling attention to fact that brother was owner of title and would have to be consulted concerning matters then under consideration, militated in any way against parol trust agreement as proved in action to foreclose deed of trust given by holder of legal title, was matter for trial court to determine.

**7. Trusts ⬧⟹88—That one executing trust deed held legal title in trust for brothers could be proved by parol evidence, though owner of trust deed or his assignee was not present when trust was created.**

In suit to foreclose deed of trust lien, fact that one executing deed of trust held legal title in trust for his brothers could be established by parol evidence, though original owner of note and deed of trust or his assignee was not present when trust was created.

**8. Appeal and error ⬧⟹1054(1)—Where record did not show that court, in trial to court, considered testimony, its admissibility will not be reviewed.**

Where trial was to court without jury and record did not show that court considered testimony complained of in any manner, Court of Civil Appeals will not inquire into its admissibility.

**9. Mortgages ⬧⟹186(4)—In suit to foreclose trust deed in which grantor's brothers claimed equitable ownership, evidence of what their tenant on other land would have stated to grantee regarding ownership of land deeded held inadmissible.**

In suit to foreclose deed of trust in which brothers of one executing deed of trust claimed equitable ownership, evidence of what their tenant on other land would have told grantee in deed of trust or his assignee regarding ownership of land covered by deed of trust, if they had asked him, *held* inadmissible because witness was never in possession of land covered by deed of trust and grantee and assignee did not know that witness had received letters from equitable owners stating that brother owned legal title and were therefore not misled by them, and, if they had inquired and witness had told them facts, owner of deed of trust would have been put on inquiry as to interest of equitable owners in land.

**10. Trusts ⬧⟹357(1)—Statute relating to conveyances by trustee applies only to conveyances after statute had become effective (Vernon's Ann. Civ. St. 1925, art. 7425a).**

Vernon's Ann. Civ. St. 1925, art. 7425a, providing that where trust is created, but not contained in conveyance to trustee, trustee shall be held to have power to convey title and transfer shall not be questioned by beneficiary, was intended to speak prospectively and applies only to conveyances of trustee after statute had become effective.

**11. Trusts ⬧⟹357(1)—Statute relating to conveyances by trustee could not apply where trust agreement and deed of trust by trustee were executed prior to enactment of statute (Const. art. 1, § 16; Vernon's Ann. Civ. St. 1925, art. 7425a).**

Vernon's Ann. Civ. St. 1925, art. 7425a, providing that where trust is created, but is not contained in conveyance to trustee, trustee shall be held to have power to convey or incumber title and such incumbrances should not be questioned by beneficiary, could not apply where trust agreement and deed of trust executed by trustee were executed long prior to enactment of statute, since rights of parties had been fixed by contracts long before enactment of statute, and to apply act retroactively would render it obnoxious to Const. art. 1, § 16, prohibiting making of retroactive law.

Appeal from District Court, Schleicher County; J. F. Sutton, Judge.

Suit by W. L. McWhorter against Walter Oliver and others. From the judgment, plaintiff appeals. Affirmed.

Hill, Neill & Hill, of San Angelo, for appellant.

Wright & Gibbs, of San Angelo, for appellees.

BLAIR, J. Appellant sued Walter Oliver on his note for $6,208.70, and to foreclose a deed of trust lien given by him to secure the note upon 640 acres of land in Schleicher county, which will be referred to as section 23. Appellees A. and E. Oliver, brothers of Walter Oliver, were made parties defendant upon the allegation that they were claiming some inferior interest in the land involved. They answered that they were the equitable owners of section 23 by virtue of the fact that Walter Oliver purchased it with their funds, and with the agreement that he was to hold the legal title thereto in trust for them; and that appellant had notice of their right to the land at the time he took the deed of trust thereon by reason of the fact that appellees were then and long prior thereto in actual possession by tenants.

After a trial to the court without a jury, judgment was rendered for appellant against Walter Oliver for the amount of the note in suit, and judgment was rendered for appellees A. and E. Oliver against appellant, for the land involved, and the judgment denied to ap-

pellant a foreclosure of his alleged lien thereon.

No formal findings of fact nor conclusions of law were filed by the trial court, but its judgment contains findings to the effect that Walter Oliver purchased section 23 with the funds of appellees A. and E. Oliver, and that Walter Oliver held the legal title thereto in trust for appellees; and it was further recited in the judgment that at the time of and long prior to the execution of the note and deed of trust by Walter Oliver, appellees A. and E. Oliver entered into the actual, notorious, and visible possession of said land through their tenants.

[1] Appellant attacks these findings of fact upon the ground that they are not supported by any legal evidence, but we do not sustain the contentions. In reference to the issues of whether Walter Oliver purchased section 23 with the funds of A. and E. Oliver, and whether he held the legal title thereto in trust for them, we find the following evidence to sustain the trial court's findings and judgment on said issues: L. J. Wardlow, who acted for himself and as agent for the administrator of the estate of E. R. Jackson, deceased, and from whom appellees purchased section 23, testified:

"As part owner and as agent for other owners, I sold and conveyed the above-described land, as I remember, to Walter Oliver. At the time of and before the conveyance of the land above described, Walter Oliver made the statement to me that said land was being purchased by himself for his brothers, A. and E. Oliver, who at that time resided somewhere in East Texas. I cannot give any further or other details of the conversation than that mentioned. Walter Oliver stated to me that the purchase price that was being paid for the land was furnished to him by A. and E. Oliver."

A. Oliver testified that Walter Oliver loaned him and E. Oliver the money with which to purchase section 23, and introduced in evidence in support of that claim a note for $2,250, dated July 1, 1915, payable to Walter Oliver, and signed by both A. and E. Oliver. He also testified that he and E. Oliver paid this note, with interest and certain expenses claimed by Walter Oliver in connection with the transaction, in 1916, as follows: $1,000 paid by E. Oliver to Walter Oliver and by Walter Oliver receiving under agreement between themselves $1,500 on a note executed by Walter and A. Oliver to W. A. Davis, which was secured by deed of trust on said section 23, concerning which transaction witness testified:

"The above deed of trust is only signed by Walter Oliver, but the note is signed by A. Oliver and Walter Oliver. The $1,500 we got from W. A. Davis went on the $2,250 note, and the $1,000 that E. Oliver furnished was the other that finished paying that note, together with the interest and exepenses Walter Oliver claimed. * * * The trade for the purchase of sec-

tion 23 was finally consummated on the 1st of July, 1915; that is when I made the final trade with Walter Oliver and he advanced us the money."

A. Oliver further testified:

"I wrote Walter Oliver on June 16, 1916, 'Inclosed you will please find check for $1,000 to apply on section 23, block A., G. C. & S. F. Ry. Co., in that county. And when the W. A. Davis loan for $1,500 is completed, that will finish paying out the section.'

"Walter Oliver purchased this land from the Jackson estate for us all the way along; there was no other agreement. That was the agreement with Judge Wardlaw. Wardlaw suggested that the deed go on through as it started with Walter, and we could adjust it between ourselves. I don't remember what year I paid off the Will Davis $1,500 note, but it was several years afterwards. That was paid out of money as I made it and saved it along."

All parties to this transaction, with the exception of Walter Oliver who did not appear as a witness in the case, agreed that the contract of purchase was made about July 1, 1915, and that a deed in consummation of the contract was executed December 16, 1915, which was recorded in the deed records of Schleicher county, and recited a cash consideration of $2,240. The above evidence is sufficient to sustain the trial court's findings and judgment upon the issue stated under the following well-settled rules of law applicable thereto:

In the case of Johnson v. Smith, 115 Tex. 193, 280 S. W. 158, it is held:

"It is certain that an enforceable express trust may be created by one person agreeing to thereafter acquire title to land in his name for the benefit of others who agree to pay and do pay the consideration for the conveyance."

In the case of Christopher v. Davis, 284 S. W. 253, the Dallas Court of Civil Appeals held as follows:

"No particular form of words is required to create a trust. If the intention of the parties is that the property shall be held and dealt with for the benefit of another, a court of equity will affix to it the character of a trust."

[2-5] The findings that at the time of and long prior to the execution of the deed of trust appellees were in actual, notorious, and visible possession of section 23 through their tenants, and the conclusion of law based thereon, to the effect that such possession and use of the land by the equitable owners charged any person dealing with the holder of the legal title with notice of such outstanding equitable title, are also sustained by the following evidence:

A. and E. Oliver, on the one hand, and W. A. Bell, on the other, owned adjoining ranches each consisting of many sections of land. The Olivers' section 23 in controversy here was fenced in the pasture of Bell, and section 17 belonging to Bell was fenced in the

pasture of the Olivers. The Olivers leased their ranch to one C. M. Reynolds. In June, 1915, A. and E. Oliver and Bell entered into an exchange or "blocking agreement" for a term of five years, under which Bell used section 23 in his pasture, and the Olivers used section 17 belonging to Bell fenced in their pasture and leased to Reynolds; the purpose of the agreement being to make the pasture of each party more compact instead of extending into the other's pasture. This five-year term expired in June, 1920, at which time E. Oliver, acting for himself and A. Oliver, entered into an agreement with Bell to continue the blocking arrangement "for another five years, or until a permanent agreement should be reached," and Bell continued thereafter to occupy and use section 23 on through to the time appellant's note and deed of trust in suit were executed; that is, November 18, 1920, and up until March, 1925; and appellees likewise continued to occupy and use through their tenant Reynolds section 17. Pelt, the original payee in the note in suit, and to whom the deed of trust was executed, assigned the note and deed of trust to appellant. Neither Pelt nor appellant made any inquiry of Bell as to his possession of section 23 at the time the deed of trust was executed; not having done so, it will be presumed as a matter of law that Bell would have told them the true situation, had either of them inquired. This evidence would authorize the conclusion that under the first blocking arrangement a mutual tenancy agreement was made whereby Bell became lessee or tenant of the appellees Oliver as to section 23, paying as rentals therefor the value of the use of section 17; that by Bell's continued use and possession of section 23 and the appellees Oliver's continued use and possession of section 17 under the extension agreement, Bell's possession of section 23 was at least of the dignity of a tenancy at will. The rule is too well settled to admit of discussion that possession of land by tenant constitutes notice of the landlord's right in the land, and, since possession is universally regarded as notice, "every person dealing with the land must take notice of actual, open, and exclusive possession." Texas L. & Land Co. v. Blalock, 76 Tex. 89, 13 S. W. 12; Tolar v. Texas Development Co. (Tex. Civ. App.) 153 S. W. 911; Low v. Gray, 61 Tex. Civ. App. 487, 130 S. W. 270; Collum v. Sanger Bros., 98 Tex. 162, 82 S. W. 459, 83 S. W. 184; Harris v. Hamilton (Tex. Com. App.) 221 S. W. 273; Marshburn v. Stewart, 113 Tex. 507, 254 S. W. 942, 260 S. W. 565; Carver v. Moore (Tex. Com. App.) 288 S. W. 156.

[6] It is true in this connection that A. Oliver had written several letters to Bell and to Reynolds calling attention to the fact that Walter Oliver "was the owner of the title" to section 23 and would have to be consulted concerning certain matters then under con-

sideration, but the trial court did not think that these declarations militated in any way against the parol trust agreement as proved, and such was a matter for it to determine. Neither Bell nor Reynolds had any contract whatever with Walter Oliver in reference to the leasing or blocking arrangements concerning section 23; nor did either of them ever pay any rentals to or attorn to Walter Oliver as their landlord.

[7] By several assignments and propositions based thereon appellant contends that the whole of the testimony above stated, and by which the trust agreement concerning section 23 was established, was not admissible as being hearsay and as not being in the presence and hearing of either Pelt, the original owner of the note and deed of trust, or of appellant, the assignee of Pelt. We do not sustain any of the propositions. It is well settled that the existence of a trust may be established by parol evidence, and as concerns third parties it is not a question of their being present when the trust was created, but the matter in which they are concerned relates only to the question of notice of the trust before they deal with the trust property. Hawley v. Greer (Tex. Civ. App.) 17 S. W. 914; Hambleton v. Hospital (Tex. Civ. App.) 172 S. W. 574; Silliman v. Oliver (Tex. Civ. App.) 233 S. W. 867. In Hambleton v. Hospital, supra, the court held:

"The eleventh, twelfth, and thirteenth assignments of error complain of the admission of testimony as to what Mrs. Amanda J. Dignowity stated in 1896 and 1897. The objections urged against the testimony are not tenable. Davis v. Davis, 44 Tex. Civ. App. 238, 98 S. W. 198. Appellees were not claiming as heirs, but as beneficiaries in a trust created by Mrs. Amanda Dignowity. There is no merit in the objection to the testimony that the statements of the grantor were made when appellant was not present, and they were admissible. The cases cited by appellant are not in point."

[8] By several assignments and propositions based thereon appellant complains of the admission of certain testimony, but since the trial was to the court without a jury, and since the record does not show that the court considered the testimony complained of in any manner, we will not inquire into its admissibility. Andrus v. Hornsby (Tex. Civ. App.) 238 S. W. 314; Johnson v. Frost (Tex. Civ. App.) 229 S. W. 558; Early-Foster v. Milling Co. (Tex. Civ. App.) 212 S. W. 964.

[9] Appellant also complains that the court erred in refusing to permit C. M. Reynolds, lessee of appellees' ranch, to testify as to what information he would have given concerning the ownership of section 23 if Pelt or appellant had made inquiry of him. The testimony was not admissible for several reasons:

First. Because Reynolds was never in possession of section 23, and neither Pelt nor appellant could excuse themselves from mak-

ing inquiry of Bell who was in possession, by inquiring of some person not in possession of the land who would have told them that Walter Oliver held legal title thereto.

Second. Neither Pelt nor appellant ever knew about the letters Reynolds received from A. Oliver, stating that Walter Oliver "owned the legal title," and were in no manner misled by them, and did not plead that they were so.

Third. If the inquiry had been made, and they had been told by Reynolds that Walter Oliver held the legal title, but that he rented from A. and E. Oliver, and his only contract was with them, certainly, Pelt would have been put upon inquiry as to the interest of appellees in the land.

[10] By a supplemental brief appellant contends that if any trust was created by the conveyance of section 23 to Walter Oliver, such trust agreement was not contained or declared in his conveyance, and under provision of article 7425a, Vernon's Ann. Civ. St. 1925, Acts of 39th Legislature, his incumbrance thereof could not now be questioned by appellees. Article 7425a reads:

"Where a trust is created, but is not contained or declared in the conveyance to the trustee, or when a conveyance or transfer is. made to a trustee without disclosing the names of the beneficiary, or beneficiaries, the trustee shall be held to have the power to convey or transfer or incumber the title and whenever he shall execute and deliver a conveyance or transfer or incumbrance of such property, as trustee, such conveyance or transfer or incumbrance shall not thereafter be questioned by anyone claiming as a beneficiary under such trust or by anyone claiming by, through, or under an undisclosed beneficiary, provided that none of the trust property in the hands of said trustee shall be liable for personal obligations of said trustee."

The act was passed some ten years after the trust in suit was created and some five years after the attempted mortgage by Walter Oliver to Pelt for the admitted purpose of securing his own debt to Pelt. That is, he executed the deed of trust individually, and not "as trustee" for appellees. Appellees insist that the article does not apply to the trust agreement in suit, first, because the article was intended to speak prospectively, and not retrospectively; and, second, its application would be prevented in this case by article 1, § 16, state Constitution, prohibiting the making of any retroactive law. The points are well taken. The language of the article clearly indicates that the Legislature intended the act to speak prospectively. The language is that, "Where a trust is created, * * * or where a conveyance or transfer is made to a trustee, * * * the trustee shall be held to have power to convey or transfer or incumber the title, and whenever he shall execute," etc., and is appropriate

language to indicate that the act was intended to speak prospectively, and to apply only to conveyances of the trustee after the statute had become effective. Freeman v. Terrell (Tex. Com. App.) 284 S. W. 946; G., H. & S. A. Ry. Co. v. Wurzbach (Tex. Civ. App.) 189 S. W. 1006; Slate v. City of Fort Worth (Tex. Civ. App.) 193 S. W. 1143; City of Fort Worth v. Morrow (Tex. Civ. App.) 284 S. W. 275; Texas & N. O. R. Co. v. Express Co., 101 Tex. 564, 110 S. W. 38; Cox v. Robison, 105 Tex. 426, 150 S. W. 1149.

[11] We are also of the opinion that since both the trust agreement and the deed of trust were executed long prior to the enactment of the statute, and that since the rights of the parties had been fixed by these contracts long before the enactment of the statute, to hold the act applied retroactively as to them would render it obnoxious to article 1, § 16, of the state Constitution, which prohibits the making of any retroactive law. Hester & Roberts v. Donna Irr. Dist. (Tex. Civ. App.) 239 S. W. 992; Crossman v. City of Galveston, 112 Tex. 303, 247 S. W. 810, 26 A. L. R. 1210.

We find no error in the judgment of the trial court, and it will be affirmed.

Affirmed.