SANDERS BRADFORD *v.* ELIZABETH TAYLOR.

1. MASTER AND SERVANT. *Injuries to employe. Assumption of risk.*

While an experienced employe is presumed in law to have assumed the risk ordinarily incident to the employment, yet one who is familiar with the general details of a business may be shown to be a novice in the operation of the machinery by which the business is carried on, and thereby relieved of the presumption.

2. SAME. *Vice principal. Fellow-servant.*

Where a servant was injured by the negligence of a vice principal in leaving a protective attachment off of a machine and in starting the machine without giving the servant warning of danger, the acts causing the injury were not, as a matter of law, performed by the vice principal while acting as a fellow-servant of the injured party.

3. SAME. *Damages. Erroneous instruction.*

Error in an instruction informing the jury of their right to award exemplary damages will not compel a reversal of a judgment in plaintiff's favor for a sum not exceeding fair compensation for the injury suffered.

FROM the circuit court of Lowndes county.

HON. EUGENE O. SYKES, Judge.

Mrs. Taylor, the appellee, was plaintiff in the court below; Bradford, the appellant, was defendant there. From a judgment in plaintiff's favor for $1,000 and costs defendant appealed to the supreme court.

The case was heretofore in the supreme court on a former appeal, and is reported—*Taylor* v. *Bradford*, 83 Miss., 157.

The declaration sets up negligence in defendant in failing to provide and have attached to a machine for ironing collars and cuffs a fender, and the negligence of the foreman of the laundry, employed by appellant, in setting the machine in motion while plaintiff was engaged in cleaning an iron roller, part of the ironing machine, at a time when the foreman had diverted plaintiff's attention from the machinery. The evi-

dence for plaintiff was, in substance, as follows: Plaintiff was employed by defendant to work in his laundry. She had several years' experience working in laundries, but none with running machinery. One Zackariah Hartzell was employed by defendant to work in, and he was the foreman and general manager of, the laundry, defendant rarely coming to the plant, Hartzell having control of everything and everybody. Plaintiff was engaged in cleaning the iron roller of the ironing machine in the laundry, and her hand was caught between the upper and lower roller, and her arm was drawn into it, and was severely crushed and bruised, causing the elbow joint to become stiff. Plaintiff's duty about the laundry was to starch the shirts and bosoms and collars and wipe them off and place them in the drying room, to look after the ladies' clothes and starch them; had nothing to do with running the machinery. At the time plaintiff began to clean the roller the machinery was not running. The fender was off the roller, which was necessary to protect the hands and keep them from getting in between the rollers. Plaintiff testified as to the accident as follows: "I was cleaning the machine—part of my regular work—when Mr. Hartzell kicked the lever and started the machine, and the roller above the iron caught my hand and jerked my arm between the roller and the ironer, crushing the bone of the elbow joint; and when he started the machine, he told me to clean it. He stepped in behind me just a moment afterwards, and asked me about some work that had to be gone over, and I turned my head to see what it was, and the roller above the ironer caught my arm." She also testified that she had, previous to the accident, called Hartzell's attention to the absence of the fender; that there was a fender in the building, but it had never been put on the machine. The sixth and seventh instructions given for plaintiff are as follows:

"6. The jury are allowed—and, indeed, it is their duty in such cases as this, where the law provided no other penalty—to consider the interest of society, as well as justice to the plaintiff,

and by their verdict, while they make just compensation, also inflict proper punishment for the disregard of public duty, if they should feel justified by the evidence.

"7. The law devolves the power on the jury, as a matter of sentiment and feeling, to be exercised by them according to their sound discretion, duly weighing the circumstances of the case and considering the state, degree, quality, trade, or profession, as well of the party injured as of him who did the injury."

*Z. P. Landrum,* for appellant.

To show that the appellant was not a novice in the use of this machine we point, first, to the allegation in her declaration that she was an expert laundress; and she could not have been an expert laundress and at the same time have been a novice in the use of this machine. We point next to her statement in her testimony that she had five years' experience as a laundress. Surely five years' experience as a laundress, use of ironing machine at I. I. & C. laundry, Avondale laundry, cleaning roller in Birmingham laundry, seeing feeder or fender at Empire laundry and Newby's laundry—surely all this is sufficient to overcome appellee's bare statement that she was a novice. "Words are but empty sounds; actions live in records." Can it be pretended that, with all this experience, this appellee was a novice in the use of this machine? On the contrary, her own testimony shows conclusively that she was an expert laundress.

Appellee says in her testimony that she saw this feeder—or fender, as she calls it—every day she worked at the marking table, which the testimony elsewhere puts five or six feet from the machine. Hartzell says in his testimony that a child could have instantly adjusted this fender, and Brent, plaintiff's own witness, says the only difficulty in adjusting it with one hand is to get the slots in. Now there it was, this fender, there within five or six feet of the roller; there she saw it every day

while she was at the marking table, a mere child could have adjusted it; and yet, never having seen anybody try to clean a roller without this appliance adjusted in the laundries at Avondale, Birmingham, I. I. & C., and Newby's, she chose to leave it off when she started to clean this one. Can she complain? 2 Labott's Master and Servant, p. 1735, secs. 597, 604; and p. 1772, sec. 613, and notes.

Hartzell, an expert, says that this feeder or fender ought to be taken off when cleaning the roller, and that its only use is as a feeder to expedite the ironing of collars and cuffs; that this machine would not be defective for cleaning if feeder or fender was off; that the machine was new and up-to-date in every respect; and that there was no chance to get hurt in cleaning this roller without gross carelessness. Brent, an expert, and appellee's own witness, says that this fender through which collars and cuffs are fed is commonly taken off in cleaning the roller; that "it is more handy" to clean the roller without feeder or fender, and that he always took the fender off when cleaning the roller. In view of such testimony, can it be said that this roller was not ordinarily safe for cleaning without this feeder or fender? If the roller was ordinarily safe for cleaning, the law is satisfied. Labott's Master and Servant, p. 110, sec. 44, *et seq.,* and notes.

As to the alleged negligent act of Hartzell, appellant's vice principal so-called, in setting the roller in motion and diverting appellee's attention, when she started to clean this roller, we remark that on the face of it this was impossible, and is but a part with the rest of this cunningly devised fable. Hartzell says that the roller had been in motion full five minutes before appellee's hand and arm were caught, and that he had marked a number of collars and cuffs five or six feet away. And appellee says in her own testimony that after Hartzell (not she) had set the roller in motion and walked five or six feet away to the marking table, he spoke about her doing some collars and cuffs, and she turned her head toward him, and her arm was caught.

Does this testimony in any way support the allegation of the negligent act of Hartzell in suddenly starting the machinery and diverting appellee's attention? Absurd! On the contrary, it shows appellee's own negligence most clearly.

The testimony shows beyond any doubt that plaintiff was hurt by her own negligent act in attempting to clean this swiftly revolving roller or mangle with her long apron instead of with rags put there for the purpose, thereby getting her hand and arm carried in with the apron between the rollers and crushed before assistance could reach her. And under the testimony this is the only way she could have suffered this accident.

*Orr & Harrison,* for appellee.

On a close scrutiny of the testimony it will be seen that every branch or section in the long sentence of Judge Truly's opinion, when the case was here before, 83 Miss., 157, is fully, distinctly, and squarely met by the testimony of the witnesses for the plaintiff. If this assertion is true, how can there be any error in the judgment now sought to be reversed? Judge Truly presents in the opinion of the court the substance of plaintiff's declaration in a condensed and perspicuous form, and concludes with the statement that the facts, if proven, would entitle plaintiff to a verdict. To that end the energies of plaintiff were directed, and if a single point is omitted in the elements fixing the liability of the defendant, it will require a larger telescopic vision to discover it than that used by the astute counsel representing Bradford in the court below.

As to the extent of the injury, Mrs. Taylor says: "The arm was jerked in up to my body, crushing my arm up to the elbow. I cannot tell you in words how much I suffered. Can dress, undress, and feed myself with difficulty. I was hurt through the carelessness of Mr. Hartzell in. starting the machine. It was about five months before I could work or do anything. My arm is permanently disabled."

Dr. Halbert says: "The humera bone of Mrs. Taylor's arm

is broken. I do not think it will ever be as sound as the other."
Dr. McCullough says: "I do not think she will ever have the use
of the arm she once had."

We have thus presented to the court the plaintiff's case as
made out in the court below, in direct conformity to the opinion
of this court in adjudicating the case while it was here on
demurrer to plaintiff's declaration. It is true that Bradford,
the defendant, and his foreman and manager, Hartzell, deny
nearly all the allegations of plaintiff and her witnesses. We
expected them to do this. For that reason we brought disin-
terested witnesses, who in every material point sustain Mrs.
Taylor in her straightforward and consistent testimony. As to
the use of the fender and the defective appliances, the conten-
tion of the plaintiff is fully supported by the expert Brent.
As to the carelessness and reckless conduct of Hartzell, the vice
principal, in starting the machinery whilst the novice and in-
experienced person was cleaning the roller, Mrs. Taylor is
abundantly supported by McDowell and Miss Anna Taylor.
As to the permanency of the injury to her arm, she is ably
supported by the two physicians, Halbert · and McCullough.
But no matter how many denials were made by Bradford and
Hartzell, the jury accepted as true the testimony of Mrs. Tay-
lor. The judge below evidently thought the jury read the
character of the witnesses and their testimony aright, as he
refused a new trial. The only error in the verdict was that it
was for too small an amount.

TRULY, J., delivered the opinion of the court.

The proof upon this trial fully sustained all the material
allegations of the declaration, and upon the former appeal here-
in it was decided that the declaration in the case presented a
good cause of action. It is argued that appellee is not entitled
to recover because the proof shows that she was an experienced
laundress, and is therefore in law presumed to have assumed
the risks ordinarily incident to such occupation. As a general

legal proposition, this is sound, but it has no application to the case at bar, for this reason: The testimony, which the jury decided to be true, shows that, while appellee was familiar from previous experience with the general details of laundry work, she was a novice in the operation of machinery, and ignorant and without experience in the use of the particular defective machine by which she was injured, which was by the master negligently permitted to remain in an unsafe and defective condition, and which the appellee had been, by her vice principal, misled into believing to be safe. Risks so arising were not incident to her employment, and she had the right to rely upon the representations of her vice principal. The proof showed that the appellee was injured by the negligence of her vice principal, standing in the relation of master to her. The contention that in the commission of the particular act causing the injury the vice principal was acting in the capacity of a fellow-servant with appellee is not tenable. The injury was caused conjointly by the negligence of the master in leaving off a necessary protective attachment from the machine by which appellee was injured and by the act of the vice principal in starting the machinery without warning to appellee and distracting her attention so that she was unaware of the peril of her situation. The act of the vice principal in starting the machinery was in no sense the act of a fellow-servant with appellee. The record plainly discloses that the machinery was solely in the charge of the vice principal, and the operation thereof no part of the duty of appellee.

The sixth and seventh instructions for appellee are erroneous, and ought not, strictly speaking, to have been given under the facts of this case; but inasmuch as the amount of the verdict found by the jury does not exceed, or in fact measure up to, the compensation which appellee was entitled to recover, it is manifest that they did not prejudice the rights of appellant. Wherefore the error is not of sufficient importance to justify the reversal of a cause in which the right result has

been reached and the damages awarded are by no means excessive.

*Affirmed.*