## JAKE RICHARDS *v*. CITY LUMBER CO.

[57 South. 977.]

1. MASTER AND SERVANT. *Actions. Proof. Variance. Statutes. Retroactive operation. Constitutional law. Vested rights. Laws 1910, Ch. 135.*

   A plaintiff cannot predicate his recovery on grounds not alleged in his declaration and it is not error for the court to refuse an instruction which does this.

2. LAWS 1910, CH. 135. *Retroactive operation.*

   Chapter 135, Laws 1910, providing that "in all actions hereafter brought" for personal injuries, contributory negligence shall not bar a recovery, is not retroactive.

3. SAME.

   The rule is fundamental, in the construction of statutes, that they will be construed to have a prospective operation, unless the contrary intention is manifested by the clearest and most positive expression; such a construction should be placed upon a statute in order to preserve, if possible, its constitutionality.

4. CONSTITUTIONAL LAW. *Vested rights.*

   The legislature has no power to take away vested rights in order to create a cause of action out of an existing transaction for which there was at the time of its occurrence no remedy; nor can it destroy a valid defense to an action existing before the enactment of the statute.

APPEAL from the circuit court of Pike county.
HON. D. M. MILLER, Judge.

Suit by Jake Richards against the City Lumber Company. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Brady & Dean*, for appellant.

We desire to call the attention of the court especially to what we believe to be serious errors committed by the trial judge, as follows:

First, in refusing to grant to plaintiff below the instruction asked by him, and refused, numbered "4."

Second, in granting to defendant below the instructions asked by it, and given, numbered "6" and "11."

With regard to the first point noted, we beg to quote again the instruction refused:

"The court instructs the jury for the plaintiff that if they believe from the evidence in the case that Lucius Magee, in the absence of Skean, was by the defendant authorized to perform the duties of the superintendent, and that at the time the plaintiff was injured he was in charge of the planing machines performing the duties of the superintendent, and saw the machine choke, or, by the exercise of reasonable care could have seen it, then it was his duty, as superintendent in charge, to direct the manner of handling the machine; and if they believe from the evidence, that with knowledge of the trouble he neglected and failed to direct the handling of the machine after it choked, and he left plaintiff to his own resources, and that the plaintiff, while exercising reasonable care and caution, was injured by the breaking of a belt which was defective, or defectively laced, then they will find a verdict for plaintiff, even though they may believe the lumber being passed through the machine was too large and choked the machine."

Appellant contends that this instruction correctly stated the law and there was no good reason for not granting it. It is not an instruction on the weight of evidence, for it does not say that Lucius Magee was acting superintendent in the absence of Skean, but leaves that to the determination of the jury; it further leaves to be determined by the jury the question of whether or not he neglected and failed to direct the handling of the machine, with knowledge of the trouble; and states finally that "if they believe from the evidence that the plaintiff, while exercising reasonable care and caution, was injured by the breaking of a belt which was defect-

ive, then, . . . etc.'' The saving expression, ''if they be-
lieve,'' applies to every question stated in the instruc-
tion, to the condition of the belt as well as the status
of Lucius Magee. The jury are not precluded by it from
finding that the belt was defective, but are instructed
that if they believe that plaintiff was injured by the
breaking of a belt which was defective, and the other
facts theretofore stated are found to exist by them, then
they will find for plaintiff.

There was testimony offered upon every point men-
tioned in the instruction. There was testimony that Lu-
cius Magee was in charge of the mill and machinery in
the absence of superintendent Skean, and this testimony
came from defendant's witnesses as well as plaintiff's.
It was ''up to the jury'' to decide whether or not by au-
thority or custom he stood in the place of the superin-
tendent, in his absence, and was vested with the same
powers; there was testimony from which the jury could
say that at the time of this accident Lucius Magee, the
acting superintendent, saw the machine choke, or could
and should have seen it choke; there was testimony from
which they could say that he failed and neglected to
perform the duties of acting superintendent and left
plaintiff to his own unaided resources; there was testi-
mony that the belt was not in a good condition, but was
defective and worn; there was abundance of testimony
that the belt was defectively laced, witness Morris' testi-
mony on this point being different from what it is stated
by appellee to have been, as he stated that he never
used wire lacing, used lace leather, laced his belts dou-
ble, which was more substantial than the single lace,
which was a cheap and easy way only. There was also
testimony that plaintiff was exercising a proper degree
of care and caution. This being true, how can it be de-
nied, as a matter of law, that if Magee, in the absence
of the superintendent, became superintendent in charge
of the machine, and if he saw the machine choke, and if

he failed to exercise his duties, and if the belt was defective or defectively laced, and if plaintiff exercised reasonable care and caution and was injured by the breaking of the belt, then he should recover damages from defendant? Yet that is what the instruction did set forth—and the lower court refused.

This is a true statement of the law, even though appellee should go so far as to claim that Magee did not possess the dignity of a vice principal. See *Bradford v. Taylor,* 85 Miss. 409.

The proof did not show that Skean was within fifteen or thirty feet at the time of the accident, or when the machine choked, but his own testimony shows that he was outside of the mill, and out of sight of Richards, while Magee was right on the scene. Further, the instruction was not calculated to relieve Richards of the effect of his own negligence, if he was guilty of such. It was and is a good instruction.

With regard to the error committed by the trial judge in giving to defendant the instructions numbered "6" and "11," which read as follows:                    •

"6.   The court instructs the jury for the defendant that if you believe from the evidence that the plaintiff was injured by reason of his own negligence, or that his own negligence contributed proximately to his injury, then you must find for the defendant."

"11.   The court instructs the jury for the defendant that even though you may believe from the evidence that the belt was in a defective condition, yet if you believe plaintiff knew it, or could have known it by the exercise of reasonable care, and that he voluntarily used it in that condition, and was thereby injured, then he cannot recover in that case, and you should find for the defendant."

These are in direct violation of the law as laid down in chapter 135, Laws of Mississippi of 1910, which it is needless to quote here, except its opening phrase, namely,

"In all actions hereafter brought. . . ." This act was approved April 16, 1910, while the suit in question was not filed until January 12, 1911. The objections urged to this act so far as its "retroactive" feature is concerned, while naturally to be expected from appellee, are yet without merit. Only two of the authorities cited by appellee are in point, namely *Reed & Co.* v. *Beall,* 42 Miss. 472, and *Powers* v. *Wright Bros.,* 62 Miss. 35, which bear out the rule laid down in 8 Cyc. 1017 (X. A. 2) and 1019 (X. A. 3), (b, c); also 36 Cyc. 1213, paragraph 2.

No vested rights are disturbed by the retrospective action of this law, no obligation of any contract impaired, no change made except that by this statute the common law is more clearly enunciated, and it is the duty of the trial judge to charge the juries accordingly. This was not done in this case, and there is no escape from the consequence of this failure on his part. The act is constitutional. See *Natchez & Southern Railroad Co.* v. *Crawford,* 55 South. 596.

*Price & Price,* for appellee.

On the 16th day of April, 1910, long after the appellant had been injured, and the rights and liabilities of the parties fixed by existing laws, the legislature of Mississippi passed the following act:

"In all actions hereafter brought for personal injuries or where such injuries have resulted in death, the fact that the person injured may have been guilty of contributory negligence shall not bar a recovery, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured.

"Sec. 2. All questions of negligence and contributory negligence shall be for the jury to determine.

"Sec. 3. That this act shall take effect and be in force from and after its passage.

"Approved April 16, 1910."

There was no effort on the part of able counsel for the appellant in the trial of this cause in the circuit court to make Ch. 135 of the Laws of 1910 applicable to this case, but, in reading their brief we find it is sought here to make that statute apply, whereas the injuries were received, and the rights of the parties fixed, under the law existing at the time, long before the passage of the act above quoted.

Appellant claims that this statute is retrospective, and the rights of the parties must be determined by it and not by law in force at the time of the accident.

The mere fact that this act was not in existence at the date of the injury complained of, but was enacted by the legislature long thereafter, in our judgment is an all sufficient answer, and should put at rest that question.

It is not our contention that no retrospective law can be passed in Mississippi; but if such a statute is passed and is not by its terms wholly retrospective, then it will not be declared by the court retrospective. It must expressly, positively and certainly be so declared in the face of the statute. Such a statute is so closely akin to an *ex post facto* law, and carries with it so much of its mischief, that it could not be construed by the court as retrospective. To so construe it would be to impair vested rights.

In *Carson* v. *Carson*, 40 Miss. 349, this court said: "Courts of justice always express the strongest disapprobation of such legislation and will never be persuaded that the legislature intends to give a retrospective effect to its enactment without the clearest and most positive expression of such a purpose."

In the case cited, the act of February 6, 1860, was under consideration, and it provided "that in all cases where parties have, prior to the passage of this act, lived separate and apart for the period of four years within this state, and either of them may desire to be divorced

from the bonds of matrimony, and have not lived separate and apart by collusion, and with the intent of procuring a divorce, it shall be lawful for them, or either of them, to file a bill setting forth such desire; and upon due proof of such living separate and apart, it shall be competent for the court to decree a divorce from the bonds of matrimony.''

The court will observe that this statute had no prospective operation at all, but was wholly retrospective.

''But where an act is, like the present, retrospective only, and purposes to operate alone upon acts that have already passed, and has no prospective operation whatever, there is no room left for construction, and courts are obliged, however, reluctant, to give effect to the intention of the framers.''

That act impaired no contract, and divested no vested rights, as the one here under consideration. That act was wholly retrospective; the one here is wholly prospective.

The same case holds—''that such legislation cannot be too strongly condemned as unwise, impolitic and unjust.''

In 8 Cyc., at page 1022, it is said, that ''Statutes not expressly made retrospective in terms, are otherwise construed, if possible, citing 4 Cal. 127; 28 Ga. 597; 7 Wend. (N. Y.) 661; 5 Am. Dec. 291; 28 L. R. A. 796; 11 Lea, Tenn. 127; 10 Cen. Dig., Const. Law, 535.

In 36 Cyc. page 1210, the doctrine is announced: ''The rule that statutes are not to be construed retrospectively, unless such construction was plainly intended by the legislature, applies with peculiar force to those statutes the retrospective operation of which would impair or destroy vested rights.''

''And where a right of action for damages has accrued before the passage of the act, such rights will not be impaired or affected by the new act.'' Citing 186 N. Y. 66; 141 N. Y. 158; 29 Pa. St. 22; Same vol., Cyc., page 1212, we quote:

"A statute will not be given a retroactive construction by which it will impose liabilities not existing at the time of the passage," and included in this are liabilities imposed upon common carriers." 70 Miss. 701; 10 S. & M. 599; 56 Miss. 173; 62 Miss. 35; 12 S. & M. 304; 82 Miss. 135. See Hutchinson's Code, 728, for statute construed by the court. 65 W. Va. 456; 23 Ky. 1546; 43 N. Y. 400; 103 Va. 250, 48 S. E. 889; 42 Am. Dec. ——; Dec. Ed. Const., Sec. 23, 42 L. R. A. 783.

Same Cyc., at page 1215, we quote: "Such a statute will not be applied by the courts to actions or proceedings pending at the time of its passage whenever such application would work injustice, as by cutting off rights to which parties were entitled under the prior law, or subjected a party to new liabilities." Citing 58 Me. 395, 93 N. W. 144; 200 Mo. 718.

In the *Carson case, supra,* the court held "that marriage was not a civil contract, could not be dissolved by mutual consent, but was 'public juris,' subject to the public will, establishing fundamental relations, and no vested rights are violated."

The case of *Reid & Co.* v. *Beall,* 42 Miss., cited by counsel, has no peculiar application to the case at bar. It holds: "That because the town of Corinth had taxed Reid & Company, was no reason why the state should not also tax the same concern. That the fact was a revenue measure involving the state's sovereignty, and the license to sell liquor was in no way a contract, and such rule would be to create a contract where none existed, and one without mutuality."

"That the license was merely a franchise, and a franchise being a creature of the law and peculiarly the object of the taxing power is not exempt from taxation, unless it is specially provided against by the act creating the franchise."

There being no statute in this state changing the common law that applied to this case, the defendant was entitled to an instruction on contributory negligence.

The instruction complained of by appellant is as follows:

"The court instructs the jury for the defendant, that if you believe from the evidence that the plaintiff was injured by reason of his own negligence, or that his own negligence contributed approximately to his injury, then you must find for the defendant."

The general rule is, that no statute is to have a retrospect beyond the time of its commencement. Blackstone treated it as a first principle, that all laws are to commence in the future and operate prospectively, 1 Comm. 44.

Lord Coke lays down the rule to be: "That an act is to be so construed, so that no man who is free from injury or wrong shall by a literal interpretation be endamaged or punished."

If contributory negligence was a defense before the act was passed, then to declare the act applicable to this case, vested rights are disturbed and the defendant damaged.

If chapter 135 of the Laws of 1910 applies to this case, then we possessed rights before the statute was enacted, which we do not now possess. We had defenses then that we have not now, and these defenses went to the entire cause of action. To make such an "unwise, impolitic, and unjust" statute applicable, takes our money and delivers it to the plaintiff, makes us liable for heavy damages where we were not liable for any damages under the law when the injury was sustained. In the one case the plaintiff had to be free from negligence; in the other the defendant must be free from negligence. In the one case, if defendant was negligent, the plaintiff must be free from negligence. We quote extracts below from the opinion in *Dash* v. *Kleech*, 5 Am. Dec., 306, decided by O. J. Kent:

"A statute is never to be construed against the plain and obvious dictates of reason." "Courts are bound

to give such construction to statutes as is consistent with justice, though contrary to the letter of the stat-ute.''

''Any other construction, and we are punishing an innocent party, as well as divesting him of a right pre-viously acquired under the existing law.''  ''We are to presume, out of respect to the lawgiver, that the stat-ute was not meant to operate retrospectively, and if we call to our attention the general sense of mankind on the subject of retrospective laws it will afford us the best reason to conclude that the legislature did not in-tend to set so pernicious a precedent.''  ''How can we possibly suppose that in so unimportant a case, when there was no strong passion to agitate and no great in-terest to impel, that the legislature coolly meant the prostitution of a principle which has been venerable for the antiquity and universality of its sanction, and noth-ing short of the most direct and unequivocal expression should justify such a conclusion.''

Quoting from Judge Thompson, in the same case, page 303: ''the best settled rule of construction given by the English courts to the Statute of Frauds, 29 Car. ii, Ch. 3, goes strongly in corroboration of the interpretation I have given to the act before us.''

The language in that statute is ''that from and after the 24th of June, 1677, no action shall be brought where-by to charge any person upon an agreement in consid-eration of marriage, etc.''  ''Yet it has been uniformly held, that it would not retrospect, so as to take away a right of action to which a party was before that time entitled, but applied only to promises made after the 24th of June, 1677.''

If it could take away no right of action from the plaintiff, then it could take away no right of defense existing to the defendant.

''It is not pretended that we have any express con-stitutional provision on the subject; nor have we on

numerous other rights, dear alike to freedom and justice.''

''An *ex post facto* law in the technical sense of the term is usually understood to apply in criminal cases, and this is its meaning when used in the Constitution of the United States. Yet laws impairing previously acquired civil rights are equally within the reason of that prohibtion and equally to be condemned.''

''We have seen that the cases in the English and civil laws apply to such rights, and we shall find upon further examination that there is no distinction in priciple, nor recognized in practice, between a law punishing him civilly by divesting him of a lawfully acquired right.'' ''The distinction consists only in the degree of the oppression, and history teaches us that the government which can deliberately violate the one right, soon ceases to regard the other.'' A law may be repealed by the legislature, but the rights of citizens existing under such a law cannot cease.'' ''It would be an act of absolute injustice to abolish with a law all the effects which it had produced.'' ''Even French despotism, as atrocious as it is in practice, yields, in its law to the authority of such a principle.'' ''And as often as the question has been brought before the courts of justice in this country, they have uniformly said that the objection to retrospective laws applies as well to those which affect civil rights as to those which relate to crimes.''

We are not to be understood as contending that all retrospective laws are *ex post facto,* yet we know that all *ex post facto* laws are retrospective.

Argued orally by *G. Q. Whitfield* and *T. Brady*, for appellant.

McLEAN, J., delivered the opinion of the court.

Appellant was in the employ of the appellee in appellee's saw and planing mill, and while so employed was

injured, and this suit is brought to recover for the injuries sustained. The count in the declaration is that it was the duty of the master to provide the plaintiff with a reasonably safe place in which to do the work assigned him, and to furnish the plaintiff with suitable, safe, and sufficient machinery and appliances with which to do the work, but that the defendant did not perform its duty in this respect; and the declaration further alleges that the work enjoined upon plaintiff became, without the knowledge of plaintiff, perilous, dangerous, and hazardous, by reason of the fact that the plaintiff was put to work in the planing mill, which was worn, old, and so defective that, when a heavy piece of lumber was put in it to be planed, it put so much and unusual force upon the belting as made the belt to break, and that the belt by which the machine was run was old, worn, defective, and worthless, and defectively laced, and by its inherent weakness and lack of strength the belt could not bear the strain put upon it in operation of the machine, and that consequently, as a result of this defective condition of said machine and belting, plaintiff was injured in the following manner, to wit: He was placed at work feeding the machine, and was working around it with reasonable care in the regular discharge of his duties to his master, when the belting and the end of it flew back and struck him with great force in the face, and destroyed his left eye and its sight forever, and, that, by reason of the negligence of the defendant in failing to furnish the plaintiff with reasonably safe appliances and machinery aforesaid, said plaintiff lost his left eyesight, etc.

We have been so particular in describing the cause of action as set out in the declaration, because the allegations of the declaration are material for the proper consideration of the question presented. There was some evidence to the effect that one Skean was the superintendent of the mill, and that in his absence one Lucius

Magee was the vice principal of the defendant, and that
at the time plaintiff was injured he (Magee) was in
charge of the planing machine, performing the duties
of the superintendent; that the machine choked; that
Magee saw the said machine choke, or by the exer-
cise of reasonable care could have seen it, and failed
to direct plaintiff how to use the machine. The chief
contention of the appellant is the refusal of the court
below to grant for him instruction No. 4, which the court
declined to do. That instruction is as follows: "The
court instructs the jury, for the plaintiff, that if they
believe from the evidence in this case, that Lucius Ma-
gee, in the absence of Skean, was by the defendant au-
thorized to perform the duties of superintendent, and at
the time the plaintiff was injured he was in charge of
the planing mill, performing the duties of the superin-
tendent, and saw the machine choke, or by the exercise
of reasonable care could have seen it, then it was his
duty as superintendent in charge to direct the manner
of handling the machine; and if they believe from the
evidence, with knowledge of the trouble, he failed and
neglected to direct the handling of tht machine after it
choked, and he left the plaintiff to his own resources,
and that the plaintiff was exercising reasonable care and
caution, and was injured by the breaking of the belt,
which was defective, or defectively laced, then they will
find a verdict for the plaintiff, although they may believe
the lumber being passed through the machine was too
large and choked the machine."

Without passing upon the correctness or incorrectness
of this instruction, a sufficient answer to the contention
of appellant is that the princple invoked in the instruc-
tion is not the ground upon which the plaintiff sought
to recover in his declaration. The declaration, as here-
inbefore stated, simply charges that the defendant failed
to provide the plaintiff with a reasonably safe place in
which to work, and failed to furnish him with safe and

sufficient machinery and appliances with which to work, and that the injury sustained was caused by the breaking of the belt, which was worn and defectively laced. A mere inspection of the declaration and of the instruction refused demonstrates the correctness of the court in declining to give the instruction. A party cannot make out one case in his pleading and a different one by his evidence. The case of *Bradford* v. *Taylor,* 85 Miss. 409, 37 South. 812, which appellant relies upon, is not in point, because the proposition upon which the plaintiff recovered was set forth in the declaration, and there was no variance in the evidence and the allegations in the declaration. The instant case was properly submitted to the jury, and the instruction directed the findings of the jury to the issues presented under the pleadings.

It is urgently insisted that the court erred in giving an instruction to the defendant to the effect that contributory negligence was a defense; and appellant contends that contributory negligence is not a defense, under chapter 135 of the Laws of 1910. The facts in this case are that the injury occurred on the 30th day of March, 1910, and the suit was instituted on January 12, 1911, and chapter 135 of the Laws of 1910 was approved and took effect on April 16, 1910. In other words, the contention is that this act of the legislature had a retroactive effect.

The rule is fundamental, in the construction of statutes, that they will be construed to have a prospective operation, unless the contrary intention is manifested by the clearest and most positive expression, and, further, that such a construction should be placed upon the statute in order to preserve, if possible, its constitutionality; that the legislature has no power to take away vested rights, in order to create a cause of action out of an existing transaction, for which there was at the time of its occurrence no remedy; nor can it destroy a

valid defense to an action existing before the enactment of the statute. These principles are fundamental, and require the citation of no authorities to support them.

The act reads: ''In all actions hereafter brought.'' It may be that this language is sufficiently broad to cover causes of action arising prior to the passage of the act; but our duty is to so construe the act to preserve, if possible, its constitutionality, and, since it is not manifest that the purpose of the legislature was to embrace prior causes of action and thereby destroy vested rights, we must construe the act so as to limit its operation to causes of action arising subequent to its passage. The law is: ''Statutes not expressly made retrospective in terms are otherwise construed, if possible.'' 8 Cyc. 1022, and authorities cited.

We see no error in the record, and it is affrmed.

*Affirmed.*

*Suggestion of error filed and overruled.*