McCreight *et al. v.* W. W. Scales & Co. *et al.*

[99 So. 257.   No. 23771.]

(Division B. Jan. 28, 1924. Suggestion of Error Overruled March 10, 1924.)

Constitutional Law.   *Homestead.   Law extending exemption in certain cases held valid.*

> Section 1821, Hemingway's Code (chapter 225, Laws of 1914), extending the exemption of a homestead so as to preserve the exemption to a person who has been an exemptionist, who is above sixty years of age because of not having a family or not occupying the homestead, is not unconstitutional as impairing the obligation of a contract made before the enactment of the amending statute, where the property involved was exempt both at the time of executing the contract and at the time of the passage of the law, as the creditor never had a right to resort to such property for the satisfaction of his debt, and had no vested right in reference thereto.

Appeal from chancery court of Oktibbeha county.
Hon. A. J. McIntyre, Chancellor.

Proceeding between S. H. McCreight and others and W. W. Scales & Co. and others. From a judgment dissolving an injunction restraining the execution of a judgment, the former appeal. Reversed, and judgment entered.

*W. W. Magruder,* for appellants.

The chancellor held subject to execution in favor of appellees, an undivided seven-twelfths interest in a cer-

tain tract of land.  The case involves directly or indi-
rectly the constitutionality, application, and effect of
chapter 225, Laws of 1914, which appears as section 1821
of Hemingway's Code.  Prior to the amendment of
1914 J. B. McCreight contracted certain indebtedness to
W. W. Scales and Company upon which appellees se-
cured an office confession of judgment on the 13th day
of May, 1920.

Chapter 225, Laws of 1914, was adopted on the 26th
day of March, 1914.  J. B. McCreight was on that date
more than sixty years of age and was living on said
tract of land with his wife, Mrs. V. L. McCreight, as
his homestead.  Mrs. V. L. McCreight died on the 24th
day of May, 1919.  J. B. McCreight died on the 11th day
of July, 1920.

Appellees secured a decree in the lower court against
such seven-twelfths interest in said land, such decree
holding in effect that chapter 225, Laws of 1914, was
unconstitutional if given retroactive operation to pro-
tect the homestead exemption of said J. B. McCreight,
deceased.

The land involved in this litigation was not subject
to execution when the original debt of appellants' intes-
tate to appellees was contracted.  Such land was not
subject to execution on the 26th day of March, 1914,
when the legislature of that year adopted such chapter
225, Laws of 1914.  Appellees at that time enjoyed no
vested right whatever against the land involved in this
litigation, and the legislative amendment was adopted at
a time when said land was not subject to execution on
appellees' indebtedness on judgment against appellants'
intestate, J. B. McCreight, deceased.

The indebtedness of McCreight to Scales and Company
was contracted under section 2146 of the Code of 1906.
This statute was amended by the legislature of 1914,
section 1821, Hemingway's Code.  The instant case in-
volves directly or indirectly a Constitutional question

as to the application and effect of this amendment.

A comprehensive discussion of the question before the court for consideration will be found in 11 R. C. L., 490-91.

We recognize the constitutional inhibition against the impairment of any pre-existing contract by legislation; but we insist that the legislature in this case, by chapter 225, Laws of 1914, took from appellees no material right enjoyed by them as against appellants or their intestate, J. B. McCreight.

We have a number of early cases from different states based on a *dictum* in *Bronson* v. *Kinzie,* 11 U. S. (L. Ed.) 143, holding that statutes exempting property from execution may be applied to pre-existing contracts and do not violate such Constitutional provisions. Subsequent decisions by the supreme court of the United States, and by many other states, including our own state, make it entirely clear that any statute, creating exemptions or enlarging and increasing exemptions, may not under the Constitution be applied to pre-existing contracts or indebtedness.

We insist, however, that chapter 225, Laws of 1914, can properly under the Constitution, and under the facts of the instant case, be applied to it without violation of such constitutional inhibition.

Exemption laws are absolutely essential to the welfare of the body politic. Such statutes should receive a liberal construction in favor of the debtor "in order to advance the humane purpose of preserving to the unfortunate or improvident debtor and his family the means of obtaining a livelihood, and thus preventing him from becoming a charge upon the public." *Chapman* v. *Berry,* 73 Miss. 437. Appellees rely mainly upon *Johnson* v. *Fletcher,* 54 Miss. 628, in their demand that chapter 225, Laws of 1914, cannot be applied as against their indebtedness contracted prior to that date.

134 Miss.—20.

In *Johnson* v. *Fletcher,* decided under Acts of 1875, page 122, the court held that such amendment of the former statute, increasing the exemption from one horse or mule to two horses or mules, was unconstitutional or would be unconstitutional if given retroactive operation and effect. In the instant case, we have no increase whatever of the previous exemption by the Laws of 1914, either material or immaterial. In *Johnson* v. *Fletcher,* the legislature undertook to double the pre-existing exemption and the supreme court merely denied its retroactive effect against pre-existing contracts. We certainly take no issue whatever with that position.

When the debt was contracted, J. B. McCreight's land was not subject to appellees' execution, being a homestead. If, therefore, such land, as appellees concede, was not subject to execution when this statutory amendment was adopted on March 26, 1914, what did such amendment take away from appellees? What contractual right was thereby impaired? They had on that date, March 26, 1914, an absolute right to convey such land without consideration, or to do whatever they chose to do with it. Scales had no right whatever to look to it for the satisfaction of his indebtedness. The legislature deprived him of nothing. It took nothing from him. It impaired no contract. He is without standing in court to protest against a legislative amendment with which he has no concern or interest whatever, and which did not deprive him of any constitutional right. There is nothing in *Rice* v. *Smith,* 72 Miss. 42, or *Leslie* v. *Phipps,* 49 Miss. 790, that militates in the slightest degree against our position.

Under *Richards* v. *City Lumber Company,* 101 Miss. 678, this court held in effect that the constitutional inhibition against the impairment of contracts was intended to prohibit; confiscation of vested rights; denial of a valid and pre-existing defense to a cause of action.

We refer the court to the following for a general discussion: *American Mercantile Exchange . v. Blunt,* 120 A. S. R. 478, 479; *Brearly School* v. *Ward,* Ann. Cas. 1912-B, 251, and the notes thereunder; *Morse* v. *Goold,* 11 N. Y. 281, 62 Am. Dec. 103; *Hannum* v. *M. C. Inturf,* 6 Baxter (Tenn.) 225, and *The Virginia Homestead Cases,* 22 Gratt. 266, 12 Am. Rep. 507.

But these cases clearly have no value whatever as against appellants in the instant case for the manifest reason that our Statute of 1914 does not withdraw or undertake to withdraw from execution or other process any property subject thereto when this indebtedness was contracted to appellees. *Foster* v. *Byrne,* 76 Iowa 295, 35 N. W. 513, 41 N. W. 22; *Woolard* v. *Sturn,* 96 Iowa, 555, 65 N. W. 847.

*Leftwich & Tubb,* and *W. E. Ward,* for appellees.

The only question is whether or not the amendment to section 2146, Code of 1906, by Act of the legislature of 1914, chapter 225, approved the 26th day of March, 1914, and now inserted into Hemingway's Code, section 1821, is retroactive and deprives the appellee Scales of his vested rights fixed by law for the collection of his debt for which the note in question was given, dated December 1, 1913, and which was then given for a pre-existing debt. By section 819, Code of 1906, judgment liens bind all of the debtor's property. There was a judgment lien here.

Our court has decided that the head of a family must be the husband or wife, who has a family dependent on him or her for support; *Hill* v. *Franklin,* 54 Miss. 632; *Powers* v. *Sample,* 72 Miss. 189; *Cox* v. *Martin,* 75 Miss. 230. These cases expressly decide that the rights of the exemptionist depend on two contingencies, namely: occupancy of the premises as a home, and having a family. The question of occupancy has been dealt with

distinctly in the following cases: *Campbell* v. *Adair,* 45 Miss. 170; *Monger* v. *Gandy,* 110 Miss. 133.

These statutes of (*the*) state in force at the time of the creation of a debt, as such statutes effect exemptions and the collection of a debt, are integrated into and become part of the contract for the debt's payment. *Lessley* v. *Phipps,* 49 Miss. 790; *Richards* ₁v. *City Lumber Co.,* 101 Miss. 678; *Gunn* v. *Barry,* 15 Wallace 610, 21 Law Ed. 212.

If statutes disturb the vested rights of a creditor, they are necessarily and essentially unconstitutional and void as to him. They are valid, of course, as to contracts made after their enactment, but invalid as to pre-existing contracts. The vested rights under a contract are all of such sanctity that they cannot be disturbed. Section 16, Constitution of Mississippi; Article 1, section 10, Constitution of United States.

The Constitution of the United States forbids any law of the state disturbing vested contracts: *Lessley* v. *Phipps,* 49 Miss. 790; *Richards* v. *City Lumber Company,* 101 Miss. 678; *Gunn* v. *Barry,* 15 Wallace 610, 21 Law Ed. 212; *Edwards* v. *Keazey,* 96 U. S. 595, 24 L. Ed. 793; *Seibert* v. *U. S.,* 122 U. S. 360, 30 L. Ed. 1161; *Acker* v. *Trueland,* 56 Miss. 30; *Johnson* v. *Fletcher,* 54 Miss. 628; *Chapman* v. *Berry,* 73 Miss. 437; *Rice* v. *Smith,* 72 Miss. 42; *Musgrove* v. *Vicksburg,* 50 Miss. 677; *Pennington* v. *Seale,* 49 Miss. 518; *Blomi* v. *Loudel* (La.), 33 So. 741.

Appellant's counsel overlooks the facts. But for the Act of March 26, 1914, the moment James B. McCreight died, his widow having predeceased him, that moment he ceased to be the head of a family and his one-half interest in the homestead became liable to Scales' debt. Again, the moment McCreight and his wife, even while living abandoned the homestead, that moment McCreight's interest became liable for Scales' debt. These valuable

assets and contingencies, which were substantial, were absolutely nullified by the Act of March 26, 1914.

The learned counsel says that McCreight and his wife at the time the debt was created, could have sold the homestead and deprived Scales of it. The chance that they might not sell it was one of the vested rights of Scales. The chance that McCreight's wife might die before him and leave him a widower, when he had ceased to be the head of a family, was one of the vested rights of Scales, which the Act distinctly took away.

The case of *Johnson* v. *Fletcher,* 54 Miss. 628, thoroughly answers counsel in his untenable argument. It will be observed that in this case that the debt was created in October, 1872, when only one horse was exempt under the Code of 1871. By Act of February 12, 1875, two horses or mules became exempt. As stated by Judge Chalmers, there was nothing in the language of the Act, as there was here, to indicate whether it should be retrospective or prospective, but this court conceded that it was intended to apply to debts previously contracted and held it unconstitutional, and quoted from the cases we have cited in this brief, and many others. The learned counsel anticipates and denounces the case of *Rice* v. *Smith,* 72 Miss. 42, as having no application to this case, but we submit that counsel is mistaken.

Counsel cite certain cases and notes which have long since become obsolete because many of the courts were wrong in construing the exemption laws and held that these laws could be considered retroactive because they merely affected the remedy for the collection of the debt, and didn't affect the substance of the law. Among these cases are our own cases of *Stephenson* v. *Osborne,* 41 Miss. 119, which was distinctly overruled in *Lessley* v. *Phipps,* 49 Miss. 790. The case of *Morse* v. *Goold,* a New York Case, reported in 66 Am. Dec. 103, is another case. Much of this doctrine is elaborated in the note to *Brearly School* v. *Ward,* Am. Cases 1912B, page 251,

and notes.  Also in the note to the case of *Exchange Bank* v. *Blunt,* 120 Am. St. Rep. 472-479.  Some thought that this doctrine was winked at in the case of *Bronson* v. *Kinzie,* 11 L. Ed. 143, decided by Chief Justice TANEY, but the misapplication of that decision was soon dissipated in the case of *Gunn* v. *Barry,* 15 Wallace 610, 21 L. Ed. 212, and many other cases showing it, some of which we have quoted, and the state courts had to change their ruling.

For example, in Mississippi, in the case of *Lessley* v. *Phipps, supra,* which overrules *Stephenson* v. *Osborne, supra,* and in the case of *Spraig* v. *Compton,* 54 Ga. 355, and the cases in the court of New York, which departed from the case of *Morse* v. *Goold,* 66 Am. Dec. 103, already referred to.  Our court, in *Brown* v. *Dillehunty,* 4 S. and M. 713, deals with a statute which made the imprisonment for debt unlawful, and held that it was valid as to existing debts because it applied strictly and only to the remedy.

As decided in *Brearly* v. *Ward,* Am. Cases, 1912B, 257, the legislature may decrease the amount of exemption, and the debtor can't complain because he has no vested right in exemptions. It is a privilege and a gratuity granted him as a matter of public policy by the legislature.  Exemptions may be lessened after the debt is created, but they cannot be enlarged for the benefit of the debtor, or his heirs.

We submit that the statute in question, of March 26, 1914, is void as to the debt in controversy here due to appellee Scales, because the effect is to give to McCreight and his heirs property which they could never have received as obstructing the collection of Scales' debt but by the statute in controversy.

Argued orally by *W. W. Magruder,* for appellant, and *W. E. Ward* and *Geo. J. Leftwich,* for appellees.

Etheridge, J., delivered the opinion of the court.

Prior to the year 1914, J. B. McCreight contracted a certain indebtedness to W. W. Scales & Co., evidenced by his promissory note, at which time McCreight and his wife occupied the land involved in this suit as a homestead.   Chapter 225, Laws of 1914, was adopted on March 26, 1914, and reads as follows:

"2146 (1970).   *Homestead exemption in country.* Every citizen of this state, male or female, being a householder, and having a family, shall be entitled to hold exempt from seizure or sale, under execution or attachment, the land· and buildings owned and occupied as a residence by him or her, but the quantity of land shall not exceed one hundred and sixty acres, nor the value thereof, inclusive of improvements, save as hereinafter provided, the sum of three thousand dollars.   But husband or wife, widower or widow, over sixty years of age, who have been exemptionists under this section, shall not be deprived of such exemption because of not having family or not occupying the homestead."

McCreight at that time was more than sixty years of age.   Mrs. McCreight, the wife of said J. B. McCreight, died on May 24, 1919.   On May 13, 1920, an office confession of judgment was secured by Scales & Co. from J. B. McCreight.   On July 11, 1920, J. B. McCreight died. On August 19, 1920, a petition for execution was filed with the circuit judge of the district, and was granted and levied upon the land formerly occupied by J. B. McCreight as a homestead, and an injunction was sued out restraining the execution of such judgment by the heirs at law of J. B. McCreight and V. L. McCreight, his wife, the wife at her death owning a one-half interest in the said lands constituting the homestead and embraced in this suit.   The court below dissolved the injunction and ordered the land sold, holding it was

subject to execution under the above stated facts. From this judgment this appeal is prosecuted.

The question presented for consideration by this appeal is whether the lands were exempt from execution under the facts above stated by virtue of the act above set forth, or, if the exemption continued after the death of Mrs. McCreight, then the lands descended to the heirs free from the debts of McCreight. But if the lands ceased to be exempt the rights of the creditors to have the lands sold to satisfy the judgment would exist, and the suit of injunction would necessarily fail.

It seems that the court below was of the opinion that the act could not be applied to the debt here involved because the debt was contracted prior to the enactment of the statute, and that the creditor had a vested right on the happening of the facts above stated to have the said law applied by which J. B. McCreight would have lost his exemption, it being shown that J. B. McCreight and his wife at the time of her death had no minor children or dependents which would after the death of Mrs. McCreight continue to constitute a family. The appellants contend that, inasmuch as the property here involved was exempt from execution at the date the debt was contracted, and McCreight and his wife could have sold or otherwise disposed of the property at that time, it was competent for the legislature to enact the law and make it applicable to the homestead right here claimed.

Section 2146, Code of 1906, as it existed prior to the amendment of 1914, reads as follows:

"Every citizen of this state, male or female, being a householder, and having a family, shall be entitled to hold exempt from seizure or sale, under execution or attachment, the land and buildings owned and occupied as a residence by him or her, but the quantity of land shall not exceed one hundred and sixty acres, nor the

value thereof, inclusive of improvements, save as herein-after provided, the sum of three thousand dollars.''

The appellees rely upon *Lessley* v. *Phipps,* 49 Miss. 790, *Richards* v. *City Lumber Co.,* 101 Miss. 678, 57 So. 977, and *Gunn* v. *Barry,* 15 Wall. 610, 21 L. Ed. 212, in which cases it was held that the legislature was power-less to exempt property from execution against a debt contracted prior to the enactment of the law, as such property would be subject to the debt and so to do would be to impair the obligation of the contract prohibited both by the Bill of Rights of the state Constitution and by the provision against the impairment of the obliga-tion of contracts in the Federal Constitution. In *Less-ley* v. *Phipps,* 49 Miss. 790, our court, speaking through Judge Simrall, said:

''The lesson of the adjudications is that the creditor may trust to the law as it is when he contracts, to know how much of the estate of the debtor he may look to for satisfaction. The existing law is in the contempla-tion of both parties. That furnishes approximately a safe basis of credit. If subsequent laws may come in, and deny satisfaction out of half the property before liable, it is too plain for argument or illustration that such a statute seriously impairs the right.''

The court in that case also quoted from *Gunn* v. *Bar-ry, supra,* as follows: ''The legal remedies for the en-forcement of a contract, which belong to it at the time and place where it is made are a part of its obligation; the state may change them, provided the change involves no impairment of a substantial right. If the act fall within the category last mentioned, it is to that extent utterly void.''

We recognize the force and spirit of these decisions, but we think they do not cover the present case. At the time the contract was made the property was exempt and the creditor had no right to look to such property for the satisfaction of his debt. Therefore there was no kind of

contractual right to resort to this property. The legislature, prior to the happening of the condition which would subject the property to the claim of the creditor, could continue the exemption. In other words, the property was then exempt, and nothing had happened that would give the creditor any right to resort to it for a satisfaction of his debt. The legislature could therefore, without impairing any right the creditor had, prescribe new conditions of exemption. Before the creditor would have any right the *status* of the parties would have to change. If the wife had died prior to the enactment of the statute the plaintiff would under the law as it then existed have had a right to resort to the property of the husband, the debtor, for satisfaction of this debt. But it was not the law at the time the contract was made that he could resort to this property. Therefore, if the law at the time of the contract became a part of the contract, it gave the creditor no rights so far as this property was concerned.

It is argued here that the creditor had the right to have the conditions of exemption remain as they then were, and that one of the things which might have influenced the creditor in extending credit was the possibility of the wife dying and the debtor losing his homestead exemption. This was no such vested right as the taking away by legislation would constitute an impairment of the contract. A creditor has a right to look to certain property if the debtor should acquire it, but he had no vested right until it came into the possession of the creditor. In other words, the right was remote and contingent, and not present and existing. The event necessary to make exempt property liable might not have happened. It could be defeated at the will of the debtor. The giving of the right of exemption to exemptionists who have attained sixty years of age, and who are consequently reaching that stage of life when their ability to earn and accumulate is impaired, and the prevention of

such person becoming a subject for public support, would be a reason, in our opinion, to sustain the exemption.

We are therefore of the opinion that Mr. McCreight never lost his exemption, and on his death the property descended under our statutes to his heirs free from his debts.

The judgment will therefore be reversed, and judgment entered here making the injunction perpetual.

*Reversed, and judgment here.*