

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

GERALD C. MANN
~~WILKERSON~~
**ATTORNEY GENERAL**

Hon. George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-1208
Re: Paragraph 13, sec. 1, House Bill 89,
44th Legislature, does not apply re-
trospectively; and money erroneously
paid as gross production oil taxes
prior to the passage of said Bill can-
not be credited on the taxes that be-
come due after the Bill takes effect.

This is in answer to your inquiry in which you ask for
our opinion on the question of whether or not a person who er-
roneously paid more gross production oil taxes than were actually
due for a period prior to May 30, 1935, can receive credit for
such over-payment on the gross production oil taxes that become
due and are owned by him after that date.

Your question depends on whether or not paragraph 13 of
section 1, House Bill 89, 44th Legislature (codified as Article
7057a, Vernon's Annotated Revised Civil Statutes), includes and
applies to taxes erroneously paid prior to May 30, 1935, the
date said House Bill went into effect. Said paragraph 13 reads
as follows:

"When it shall appear that a taxpayer to
whom the provisions of this Act shall apply has
erroneously paid more taxes than were due during
any tax paying period either on the account of
a mistake of fact or law, it shall be the duty
of the State Comptroller to credit the total
amount of taxes due by such taxpayer for the cur-
rent period with the total amount of taxes so
erroneously paid."

This question was discussed in an opinion dated March
9, 1936, by Mr. Hubert Faulk, an Assistant under Attorney Gen-
eral McCraw, in which it was held that "deductions on account
of erroneous payments of taxes cannot be made behind the effec-
tive date of H. B. 89, which date was May 30, 1935."

The question was reconsidered in Conference Opinion No.

2985, dated April 28, 1936, during the administration of Attorney General McCraw, by Assistants Vernon Coe and W.W. Heath; and the same conclusion reached.

The gross production oil tax law was in effect and was known as House Bill 154 of the 43rd Legislature, prior to the passage of House Bill 89 of the 44th Legislature in 1935. House Bill 89 was only an amendment to House Bill 154, and it made several changes in the gross production oil tax law, among which was the addition of paragraph 13 in Section 1, as quoted above.

As to whether or not the Legislature intended for said paragraph 13 to apply to taxes paid before it went into effect must be determined by the words of the paragraph. We can find nothing in the other paragraphs of said House Bill 89 or in the emergency clause or the caption thereof which aids us in construing paragraph 13.

We feel that the answer to this question is controlled by the rule stated in many cases, among which is the case of Rockwall County vs. Kaufman County, 69 Tex. 172, 6 S.W. 431, in which Justice Gaines said:

"Mr. Bishop says: 'In the absence of any special indication or reason, and as a common rule, a statute will not be applied retrospectively even when there is no constitutional impediment. Some of the cases appear to hold that, to work an exception to this rule, the retrospective intent must appear in the words themselves.' Bish. Writ. Law, 84. ....We take it that in any case, in order to give a retrospective construction, it should appear, at least by fair implication, from the language used, that it was the intent to make it applicable both to past and future cases."

The same rule was followed in T. & N. O. Ry. Co. vs. Wells-Fargo Express Co., 101 Tex. 564, 110 S.W. 38; American Surety Company vs. Axtell Co., 120 Tex. 166, 36 S.W. (2d) 715; and City of Fort Worth vs. Morrow (Civ. App.), 284 S.W. 275 (error refused). See also 39 Tex. Jur. 53.

It does not appear from the language used in paragraph 13 of section 1 that the Legislature intended for it to operate retrospectively, that is, for it to apply to taxes prior to the effective date of the law; and therefore we must presume that it operates prospectively, that is, it applies only to taxes paid after it went into effect.

We have been unable to find any Texas appellate court cases involving retrospective and prospective application of laws concerning the over-payment of taxes; but we did find a Mississippi case and a North Dakota case dealing with the question. In the case of M. C. R. Co. vs. City of Hattiesburg (Sup. Ct. Miss.), 163 Miss. 311, 141 Sou. 897, a railroad company in 1923 by mistake voluntarily paid more ad valorem taxes than it owed, and in 1926 a law was passed authorizing the refund of taxes erroneously paid under the circumstances those taxes were paid; and in holding that the Act did not apply to payments made prior to its passage, the court said:

"The Legislature in 1926 passed a law (Laws 1926, c. 196) authorizing the refund of taxes erroneously paid, whether paid under protest or not, and the appellant contends that it was entitled to a refund because repayment was applied for and demanded after the passage of this act.

"In our opinion, this act has no application here, but contemplated a prospective, and not a retrospective, operation of the statute. Statutes will be given a prospective operation unless a contrary intention is shown. Richards v. City Lumber Co. 101 Miss. 678, 57 So. 977.

"A statute should not be given an effect which imposes an additional burden on past transactions, unless that plainly appears to be the intention of the Legislature. Power v. Calvert Mortgage Co., 112 Miss. 319, 73 So. 51; State v. Miller, 144 Miss. 614, 109 So. 900."

In the case of Ford Motor Company vs. State (Sup. Ct. N. Dak.), 59 N. Dak. 792, 231 N.W. 883, the court, in determining whether or not an amendment to the state income tax law was retrospective or not, said:

"The original income tax law was enacted by the Legislative assembly in 1919. Laws 1919, c. 224. Certain amendments were made by successive legislative assemblies, but there was no law in force in North Dakota prior to July 1, 1923, which made any provision for a refund of income tax payments made by a taxpayer in excess of the amount legally due from him. The legislative assembly in 1923 enacted a complete and comprehensive income tax act. Laws 1923, c. 312. The title recites that it is an act to amend and re-enact the various statutes of North Dakota relating to income

tax (such acts being specifically enumerated).
The act was approved March 7, 1923, but did not
take force or become effective until July 1, 1923.
The 1923 law contained the following provisions:

"'Sec. 38. A taxpayer may apply to the tax
commissioner for revision of the tax assessed
against him at any time within two years from the
time of the filing of the return or from the date
of the notice of the assessment of any additional
tax. The tax commissioner shall grant a hearing
thereon, and if upon such bearing, he shall deter-
mine that the tax is excessive or incorrect, he
shall resettle the same according to the law and
the facts and adjust the computation of the tax ac-
cordingly. ......

"It is the contention of the appellant that
the foregoing provisions of the 1923 law became
and were applicable to excessive or illegal income
tax payments exacted under the prior law, and that
hence they furnished plaintiff a statutory remedy
for the recovery of the payments in question here.

"'An amendatory act, like other legislative
enactments, takes effect only from the time of its
passage and has no application to prior transactions
unless an intent to the contrary is expressed in the
act or clearly implied from its provisions. ....'
26 Am. & Eng. Ency. of Law (2d Ed.) p. 712.

"'Unless the contrary intent is clearly indi-
cated, the amended statute is to be construed as
if the original statute had been repealed and a
new and independent act in the amended form had
been adopted.' 25 R.C.L. p. 1067.

"In speaking of the effect of an amendatory
act (under a constitutional provision similar to
section 64 of the Constitution of North Dakota),
Sutherland says:

"'The amendment operates to repeal all of the
section amended not embraced in the amended form.
The portions of the amended sections which are
merely copied without change are not to be consid-
ered as repealed and again enacted, but to have
been the law all along; and <u>the new parts or the
changed portions are not to be taken to have been
the law at any time prior to the passage of the</u>

amended act.  The change takes effect prospectively
according to the general rule.'  I Lewis, Sutherland,
Stat. Const. pp. 442, 443.

"We find nothing in chapter 312, Laws 1923,
indicating any intention on the part of the Leg-
islature that the new provisions embodied in that
act should be retroactive in their operation.  The
presumption is that the Legislature intended that
they should operate prospectively only."

Another reason why we are compelled  to reach the con-
clusion that this paragraph 13 is not retrospective is by vir-
tue of Section 44 of Article III of the Constitution of Texas,
and the construction placed thereon, which reads in part as
follows:

"The Legislature ... shall not ... grant, by
appropriation or otherwise, any amount of money
out of the Treasury of the State, to any indivi-
dual, on a claim, real or pretended, when the same
shall not have been provided for by pre-existing
law;  ...."

It is a well known rule of law that "a person who vol-
untarily pays an illegal tax has no claim for its repayment."
Austin National Bank vs. Sheppard, 123 Tex. 272, 71 S.W. (2d)
242.  The courts hold that "such moneys cannot be recovered
back in any sort of suit, either at law or in equity."  State
vs. Perlstein, 79 S.W. (2d) 143; and Austin National Bank vs.
Sheppard, supra.  By virtue of these rules of law a person who
by mistake voluntarily paid prior to May 30, 1935, more money
as gross production oil tax than was due, such person would
have no claim for his money back.  He could not maintain a
suit for his money back; and by virtue of the above quoted pro-
vision of the Constitution, the Legislature could not pay him
his money back.  This being true, we are forced to the conclu-
sion that the Legislature cannot reimburse a person for money
he erroneously pays as taxes by allowing such person to deduct
that amount from the taxes that later become due and that he
will be required to pay under the law, because to do so would
be to allow the Legislature to do indirectly what it cannot do
directly.

We are in accord with the conclusions reached in the
two opinions referred to above.  Our answer to your inquiry is
that paragraph 13 of section 1, House Bill 89, 44th Legislature,
applies prospectively and not retrospectively, and that a person
who erroneously paid more gross production oil taxes than were
actually due for a period  prior to May 30, 1935, cannot receive
credit for such over-payment on the gross production oil tax

that became due and is owed by him after that date.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/Cecil C. Rotsch
    Cecil C. Rotsch
    Assistant

CCR:pbp:wc


APPROVED SEP 27, 1939
s/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/BWB Chairman